UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD WILCOX, ET AL.,

        Plaintiffs,

v.

CITY OF DETROIT, ET AL.,

        Defendants.

_____/

Case No. 13-11679

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [24] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [32]**

      Due to an accusation against a significantly younger man who shared his name, Plaintiff Gerald Wilcox became a suspect in the investigation of an armed robbery he did not commit.  Defendants Eric Smigielski and Brian Headapohl, Detroit police officers, arrested Mr. Wilcox in his home without a warrant at the direction of their supervisor, Defendant Diaz Graves.  Defendant Samuel Dunagan was placed in charge of Mr. Wilcox's investigation.  Mr. Wilcox was charged with the robbery and spent fifteen days in jail before being released on bond.  The prosecution eventually dismissed the charges for lack of evidence.

1

Mr. Wilcox and his wife, Alecia Wilcox, bring constitutional and common law claims for false arrest against Defendants Headapohl, Smigielski, Graves, and City of Detroit, as well as constitutional and common law claims for malicious prosecution against Defendant Dunagan. Defendants move for summary judgment on all claims. Plaintiffs move for summary judgment only on the constitutional and common law false arrest claims against Defendants Headapohl, Smigielski, and Graves. After a hearing on January 20, 2016, the Court took the parties' motions for summary judgment under advisement.

For the reasons stated below, Plaintiffs' Motion for Summary Judgment [Dkt. #24] is **GRANTED** with respect to their Fourth Amendment false arrest claims against Defendants Headapohl, Smigielski, and Graves. Defendants' Motion for Summary Judgment [32] is **DENIED** on those claims. With respect to all other claims, Defendants' Motion for Summary Judgment [32] is **GRANTED** and Plaintiffs' Motion for Summary Judgment, if applicable, is **DENIED**. Defendants Dunagan and City of Detroit are **DISMISSED** from the case, which remains open only to determine the damages to be awarded in the judgment against Defendants Headapohl, Smigielski, and Graves on the Fourth Amendment false arrest claims.

**FACTUAL BACKGROUND**

On January 30, 2013, a man robbed a Family Dollar Store in Detroit at gunpoint. He drew his gun on cashier Lashawnda Everett and demanded the contents of the cash register. Everett lacked access to the register, but store manager Cynthia Jackson opened it and gave the robber the cash. David Windon, another employee present at the time, hid after observing the robber draw his gun.

Meanwhile, retired Detroit police officer Pride Johnson was in the parking lot. When he witnessed the robbery through the glass doors, he called the Detroit police and described the robber as a six-foot-tall Black man with medium complexion, a heavy build, and an afro hairstyle, wearing a balaclava or half ski mask. He did not describe the robber's age. Johnson observed the robber leave the store and take off in a car. He gave the car's license plate number to the police.

Shortly thereafter, two officers went to the store while two others went to the home where the car was registered. The officers at the home filed a report stating that they talked to Beatrice McKinney, who owned the home and the car. They reported that she speculated that her nephew, Gerald Wilcox, had taken the car without her permission, as he had done before. The officers also learned that she owned a handgun, which turned out to be missing; McKinney speculated that Wilcox had taken the gun too. At her deposition, McKinney testified that she gave the officers a description of Wilcox and told them that he was twenty-two or

twenty-three years old.  However, the officers' report lists Wilcox's age as forty-five.  McKinney testified that she told the officers she did not know where Wilcox lived, but that he had recently been kicked out his girlfriend's house on Strathmore Street.  This information is not in their report.

Early the next morning (January 31, 2013), Defendant Graves, a unit supervisor, received a report about the robbery and assigned it to Defendants Headapohl and Smigielski.  Using Michigan's Law Enforcement Information Network (LEIN), they found a record of a forty-three-year-old Gerald Wilcox living in Saint Clair Shores.  This was Plaintiff Gerald Wilcox.  The record included a photo of Mr. Wilcox.  Headapohl and Smigielski went to the Family Dollar Store and viewed surveillance footage of the robbery, but reached no conclusion on whether the man in the footage was also the man in Mr. Wilcox's photo.  They then went to McKinney's house, but she was not home.  They presented their information to Defendant Graves, who authorized them to go to Mr. Wilcox's home and instructed them to arrest him.

Defendants Headapohl and Smigielski, along with four other officers, went to Plaintiffs' home the same day (January 31, 2013).  Plaintiff Alecia Wilcox met the officers at the door.  The ensuing events are disputed.  At their depositions, Headapohl and Smigielski affirmed the description in Smigielski's police report from that day.  According to the report, Mrs. Wilcox lied to the officers, saying her

last name was Wilson and that nobody named Gerald lived there.  At her own deposition, however, Mrs. Wilcox denied lying to the officers.  According to Smigielski's report, Mrs. Wilcox eventually looked towards the living room and told someone that the police were looking for him.  The officers then saw Mr. Wilcox through the window.  Mrs. Wilcox then "opened the door and let [the officers] inside."  At her deposition, Mrs. Wilcox testified that the officers "just came in the house when they saw him."  She further testified that before entering, the officers had not told her why they were there.  The officers arrested Mr. Wilcox and took him to jail.  Defendant Dunagan was then put in charge of investigating the case against him.  Dunagan testified that he never believed Mr. Wilcox was actually the robber.

The next day (February 1, 2013), officers took written statements from Everett, Jackson, and Windon (the store employees who witnessed the robbery).  Everett described the robber as "maybe 30 yrs old or under."  Jackson described him as "early twenties to mid twenties."  Windon described him as between twenty and thirty.  Dunagan showed them photos of Mr. Wilcox and four other men, all of whom were in their forties.  Jackson and Windon did not identify any of them as the robber.  However, Everett identified Mr. Wilcox as the robber.

The next day (February 2, 2013), Dunagan took a statement from McKinney, the owner of the car used in the robbery.  She said that her relative

Gerald Wilcox, who she had accused of being the robber, was only twenty-two or twenty-three years old. She saw a picture of Plaintiff Gerald Wilcox and denied knowing him. Dunagan obtained an arrest warrant for Plaintiff Gerald Wilcox.

Mr. Wilcox was arraigned the next day (February 3, 2013). Bond was set at $100,000 cash. Officers took a statement from Pride Johnson (the retired police officer who witnessed the robbery). Johnson did not describe the robber's age.

Mr. Wilcox's preliminary hearing was held on February 15, 2013. Judge Shannon A. Holmes asked if McKinney—the only link between the robber and the name Gerald Wilcox—had confirmed that Mr. Wilcox was the man she had accused. Dunagan informed Judge Holmes that McKinney had denied knowing Mr. Wilcox. Judge Holmes ordered Mr. Wilcox released on a $10,000 personal bond, but declined to dismiss the charges.

On March 7, 2013, Pride Johnson (the retired officer) met Dunagan and the prosecutor for a "walk-through." He saw Mr. Wilcox and said that he was not the robber. The prosecutor dismissed the charges. Dunagan testified that he did nothing to find the actual robber after Mr. Wilcox was released, due to a heavy caseload.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

I. **Fourth Amendment false arrest**

Under the Fourth Amendment, a police officer "may not enter a private home without a warrant absent an exigency or consent." *Smith v. Stoneburner*, 716 F.3d 926, 929–30 (6th Cir. 2013) (citing *Payton v. New York*, 445 U.S. 573, 590 (1980)). The consent exception requires a free invitation into the home, rather than mere acquiescence to the officer's entry. *Id.* at 930 (citing *United States v. Moon*, 513 F.3d 527, 538 (6th Cir. 2008)). The exigency exception includes an exception for "hot pursuit," pursuant to which "an officer may chase a suspect into a private home when the [suspect] has fled from a public place." *Id.* at 931 (citing *Warden*

*v. Hayden*, 387 U.S. 294, 298–99 (1967)).  The exigency exception also permits warrantless entry to prevent the imminent destruction of evidence, if supported by a genuine exigency.  *Kentucky v. King*, 563 U.S. 452, 460, 470 (2011).  Finally, it permits entry to protect an occupant from imminent injury.  *Id.* at 460.

It is undisputed that Defendants Smigielski and Headapohl entered Mr. Wilcox's home and arrested him therein without a warrant.  Plaintiffs argue that the arrest violated the Fourth Amendment, bringing false arrest claims, pursuant to 42 U.S.C. § 1983, against Defendants Smigielski, Headapohl, Graves, and City of Detroit.

### A.    Smigielski and Headapohl

Plaintiffs move for summary judgment on their Fourth Amendment false arrest claims against Smigielski and Headapohl.  The officers move for summary judgment as well, arguing that the in-home arrest was constitutional due to exigent circumstances and consent.

No reasonable jury could find the officers' warrantless entry into the home justified by exigent circumstances.  The hot pursuit exception does not apply because the officers were not chasing Mr. Wilcox into his home after he fled from a public place.  *Stoneburner*, 716 F.3d at 931.  Defendants rely on the allegation that Mrs. Wilcox lied to the officers about her last name and the residence of a person named Gerald.  They argue that her deceptive, evasive behavior triggered

the exigent circumstances exception because (1) the officers could have believed she was buying time for Mr. Wilcox to destroy evidence, and/or (2) the officers could have believed she was lying under threat of imminent harm, justifying entry to protect her. Since there is a factual dispute regarding whether Mrs. Wilcox lied to the officers at all, the alleged lies cannot support summary judgment for Defendants. Further, the alleged lies do not preclude summary judgment for Plaintiffs; even if Mrs. Wilcox lied as alleged, the lies and their context are insufficient as a matter of law to support a reasonable belief of imminent destruction of evidence or harm to Mrs. Wilcox. Indeed, Defendant Smigielski testified at his deposition that he did not believe there were exigent circumstances. More importantly, even under their own account, the officers did not enter the home until after Mrs. Wilcox turned to look towards her husband and told him the officers were looking for him. By that point, at least, the officers knew that Mrs. Wilcox was not trying to hide his presence from them.

No reasonable jury could find that the officers entered with consent, either. The officers rely on an arrest report written by Smigielski shortly after the arrest, which states that after the officers saw Mr. Wilcox through the window, Mrs.

Wilcox opened the door and let the officers in.[1] That statement is ambiguous as to whether she invited them in, which would satisfy the consent exception, or merely acquiesced to their entry, which would not. *Stoneburner*, 716 F.3d at 930. This ambiguity is insufficient to raise a jury question in light of the officers' deposition testimony. Both Smigielski and Headapohl testified at their depositions that after officers saw Mr. Wilcos through a window, they simply walked into the house. Neither testified that they asked Mrs. Wilcox if they could enter or that she invited them in. Since Mrs. Wilcox asserts that she did not, and neither the officers' deposition testimony nor the police report states that she did, the dispute over consent is not "genuine."

In sum, it is undisputed that Smigielski and Headapohl entered Plaintiffs' home, and arrested Mr. Wilcox therein, without a warrant. There is no genuine factual dispute concerning the existence of exigent circumstances or consent sufficient to justify this warrantless entry and arrest. Therefore, Plaintiffs' Motion for Summary Judgment [24] is **GRANTED** with respect to their Fourth Amendment false arrest claims against Smigielski and Headapohl. Defendants' Motion for Summary Judgment [32] is **DENIED** on these claims.

---

[1] Plaintiffs argue that this statement is inadmissible hearsay. Because the Court holds Plaintiffs entitled to summary judgment regardless of the statement's admissibility, the Court need not resolve the question.

**B. Graves**

Defendant Graves moves for summary judgment on the grounds that he did not directly participate in arresting Mr. Wilcox, but only played a supervisory role. "[E]ven if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Cardinal v. Metrish*, 564 F.3d 794, 802–03 (6th Cir. 2009) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002)). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 803 (quoting *Combs*, 315 F.3d at 558).

Graves' supervisory role is not a defense. Defendant Smigielski testified that he and Headapohl were unsure if they had probable cause to arrest Mr. Wilcox when they presented the results of their brief investigation to Graves. He further testified that Graves, knowing that no warrant had been issued, instructed Smigielski and Headapohl to go to Mr. Wilcox's home and arrest him. This testimony is undisputed (Graves testified that he did not recall what was said). A reasonable jury would therefore necessarily conclude that Graves "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Id.* Accordingly, Plaintiffs' Motion for Summary Judgment [24] is

**GRANTED**, and Defendants' Motion for Summary Judgment [32] **DENIED**, with respect to the Fourth Amendment false arrest claim against Graves.

### C. City of Detroit

Plaintiffs argue that Defendant City of Detroit is liable for Mr. Wilcox's unconstitutional arrest because it provided inadequate training on the constitutional requirements for arrests in a suspect's home. The City moves for summary judgment (Plaintiffs do not).

To establish a city's liability for a city officer's constitutional violation under a failure-to-train theory, a plaintiff must prove that the training was inadequate for the tasks the officer was required to perform; that the inadequacy resulted from the city's deliberate indifference; and that the inadequacy actually caused or was closely related to the constitutional injury. *Shadrick v. Hopkins County, Ky.*, 805 F.3d 724, 738 (6th Cir. 2015) (citing *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). It is insufficient to show that a single official was unsatisfactorily trained; that an otherwise sound training program was administered negligently; or that better or more training could have equipped the offending official to avoid his particular injury-causing conduct, thereby sparing the plaintiff his injury. *Id.* (citing *City of Canton*, 489 U.S. at 390–91). Instead, the plaintiff must show either (1) the city adhered to its training even though it knew or should

have known that the training failed to prevent a pattern of similar constitutional violations, or (2) the city has failed to train its officers to handle a narrow class of recurring situations that present an obvious potential for constitutional violations. *Id.* at 738–39 (citing *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011); *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

The City is entitled to summary judgment. Plaintiffs cite no evidence of a pattern of similar violations. Further, though arrests in a suspect's home belong to a "narrow class of recurring situations that present an obvious potential for constitutional violation," *id.*, Plaintiffs present no direct evidence concerning the content, duration, or frequency of the City's training on the subject. Their evidence of inadequacy is simply (1) the fact that the unconstitutional arrest occurred; and (2) Defendant Smigielski's testimony that the officers acted in accordance with their training. Plaintiffs also point out that Defendant Dunagan testified that he believes the arrest was illegal—but this actually undermines Plaintiffs' claim, since it suggests that Dunagan's training adequately equipped him to understand the constitutional requirements and recognize that they were not followed in this case. Plaintiffs have presented no more than a scintilla of evidence in support of their failure-to-train claim. Accordingly, Defendants' Motion for Summary Judgment [32] is **GRANTED** on this claim.

## II.   Common law false arrest

Plaintiffs raise false arrest claims against Defendants Smigielski, Headapohl, and Graves under Michigan common law.  The parties devoted little attention to these claims in their briefs and at oral argument, perhaps relying on their similarity to the Fourth Amendment false arrest claims.  Unlike the constitutional claims, however, the common law claims are subject to the defense of Michigan governmental immunity, which the officers raised as an affirmative defense in their Answers.  Under Michigan law, a governmental employee may establish immunity to an intentional tort claim by showing the following:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
> (c) the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne County*, 760 N.W.2d 217, 228 (Mich. 2008).  The good faith standard for Michigan governmental immunity, in contrast to the objective standard used when evaluating federal qualified immunity, is a subjective test based on the officers' state of mind.  *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015).  To establish immunity, officers must prove that they did not act with intent to harm or with indifference amounting to a willingness that harm will result.  *Id.* (citing *Odom*, 760 N.W.2d at 225).  For instance, a police officer sued for arresting

someone without probable cause can establish immunity by showing that he "honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Odom*, 760 N.W.2d at 229.

Here, the officers' testimony reflects an honest belief, at the time of the arrest, that the arrest was lawful. Plaintiffs have not pointed to any evidence placing the officers' good faith in question. Indeed, Plaintiffs' failure-to-train claim rests on an argument that the officers misunderstood the law's requirements, rather than violating them in bad faith—an argument that they did not explicitly raise in the alternative. The Court holds the officers entitled to Michigan governmental immunity on the common law claims for false arrest. Plaintiffs' Motion for Summary Judgment [24] is **DENIED** on these claims, while Defendants' Motion for Summary Judgment [32] is **GRANTED**.

### III.     Fourth Amendment malicious prosecution

Plaintiffs raise a Fourth Amendment malicious prosecution claim against Defendant Dunagan. Defendant Dunagan moves for summary judgment.

"The Sixth Circuit recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (internal quotation marks and brackets omitted) (quoting *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006)). A Fourth

Amendment malicious prosecution claim has four elements: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes*, 625 F.3d at 308–09). The "malicious prosecution" label is misleading, since "malice" is not an element. *Sykes*, 625 F.3d at 310. Nevertheless, "there must be some element of blameworthiness or culpability in the [defendant's] participation" in the prosecution, "something beyond mere negligence or innocent mistake." *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

Dunagan asks the Court to find probable cause for the prosecution as a matter of law. He emphasizes that Everett, one of the eyewitnesses, identified Gerald as the robber during the photographic lineup. However, eyewitness identification is insufficient to support probable cause where "there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection." *Wesley v. Campbell*, 779 F.3d 421, 430 (6th Cir. 2015) (quoting *Ahlers v. Schlebil*, 188 F.3d 365, 370 (6th Cir. 1999)). Dunagan had ample reason to believe Everett was mistaken: (1) every eyewitness, including Everett herself

before the lineup, described the robber as in his twenties; (2) McKinney had described her relative—the one accused of briefly stealing the car used in the robbery—as in his twenties and, when shown a photo of Mr. Wilcox, denied knowing him; and (3) the photographic lineup only included pictures of men in their forties, increasing the chance that Everett would misremember the robber's age. In fact, Dunagan *did* doubt the identification, since he testified that he never believed Mr. Wilcox was the robber. Given the obvious reasons to doubt Everett's identification, it cannot overcome the rule that "[i]n general, the existence of probable cause in a § 1983 action presents a jury question." *Kinlin v. Kline*, 749 F.3d 573, 578 (6th Cir. 2014) (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

The genuine factual dispute over probable cause is immaterial, however, because there is no genuine dispute regarding whether Dunagan acted with the culpability required to sustain a Fourth Amendment malicious prosecution claim. Dunagan's reliance on Everett's eyewitness identification precludes a reasonable jury finding of any culpability greater than negligence. Negligence is insufficient to sustain a claim for malicious prosecution. *Johnson*, 790 F.3d at 655. Accordingly, Defendants' Motion for Summary Judgment [32] is **GRANTED** with respect to the Fourth Amendment malicious prosecution claim.

## IV. Common law malicious prosecution

Plaintiffs' final claim is a common law malicious prosecution claim against Defendant Dunagan. A malicious prosecution claim under Michigan law "requires evidence that the officer knowingly swore to false facts." *Newman v. Township of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014) (quoting *Payton v. City of Detroit*, 536 N.W.2d 233, 242 (Mich. Ct. App. 1995)) (internal quotation marks and brackets omitted). Plaintiffs have not pointed to any evidence that Dunagan knowingly swore to false facts. Accordingly, Defendants' Motion for Summary Judgment [32] is **GRANTED** with respect to this claim.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment [24] is **GRANTED** with respect to their Fourth Amendment false arrest claims against Defendants Headapohl, Smigielski, and Graves. Defendants' Motion for Summary Judgment [32] is **DENIED** on those claims.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [32] is **GRANTED**—and Plaintiffs' Motion for Summary Judgment, if applicable, is **DENIED**—with respect to all other claims.

**IT IS FURTHER ORDERED** that Defendants Dunagan and City of Detroit are **DISMISSED** from the case, which remains open only to determine the

damages to be awarded in the judgment against Defendants Headapohl, Smigielski, and Graves on the Fourth Amendment false arrest claims.

**SO ORDERED**.

                                                        s/Arthur J. Tarnow
                                                        Arthur J. Tarnow
Dated: February 16, 2016           Senior United States District Judge